IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00404-GPG

COREY PATRICK ROBINSON,

    Plaintiff,

v.

EL PASO COUNTY DEPT. OF HUMAN SERVICES,
COLORADO SPRINGS HOUSING AUTHORITY, and
BENNETTE VALLEY INVESTMENTS,

    Defendants.

ORDER TO AMEND

**I. Background**

Plaintiff Corey Patrick Robinson currently resides in Colorado Springs, Colorado. He initiated this action on February 18, 2016, by filing pro se a Complaint. In the Complaint, Mr. Robinson asserts jurisdiction pursuant to "El Paso County DHS acts for the State under color of law, CO Springs Housing Authority administers federal HUD programs, Benette Valley Investments is a landlord under HUD rules." (ECF No. 1, at 2). Mr. Robinson seeks money damages.

Mr. Robinson's request to proceed in forma pauperis under 28 U.S.C. § 1915 was granted on February 25, 2016.

**II. Statement of Claims**

The Court must construe the Complaint liberally because Mr. Robinson is not represented by an attorney. See *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not act as an advocate for a pro se litigant. See *Hall*, 935 F.2d at 1110. Mr. Robinson will be

directed to file an Amended Complaint for the reasons stated below.

In the Background section of the Complaint, Mr. Robinson states that he is a "member of a HUD/Section 8 assisted housing unit," and that he "engaged in civil rights enforcement activity on behalf of [himself] and a member of [his] household. (ECF No. 1, at 2). He further contends that Defendants (1) illegally released his HIV status and "other HIPPA protected information in an act of intimidation, retaliation and discrimination" because he is a witness in federal and state investigations; (2) "excluded" him from his job and housing on the basis of his disability; (3) provided false information to law enforcement and allowed "maintenance staff and employees" to view "a confidential housing file" with his "protected HIV and disability information;" and (4) failed to protect him as a tenant in good standing. (*Id.*).

In the First Claim for Relief, Mr. Robinson asserts a claim against Defendants "El Paso County DHS and CO DHS" for failing to "process my complaints leaving me on the street, in shelter and forcing my disabled employer to pay for motels/food/transportation costs for me." (ECF No. 3, at 4). He also contends that Defendant El Paso County DHS retaliated against him for filing discrimination complaints by

    (i) getting a court to "order me out of my home and off my job under false pretenses;"

    (ii) sending "an email out informing all parties and contracted agencies associate [sic] with the case that I have AIDS and with false claims that I was a danger to DHS contracted service providers and my employer's children based solely on my HIV status/disabilities;"

    (iii) causing him to lose "the opportunity to get all of my normal hours of employment because I could only work during the day due to the bus schedule and my wages were decreased by the extra transportation costs" and forcing him to use his disability money to pay for a hotel;

    (iv) "illegally refus[ing] to process my request for food assistance;"

> (v) harassing his mother by informing her that he had AIDS;
>
> (vi) "slander[ing] me and provid[ing] false information accusing me of deliberately neglecting my client or abandoning her care;"
>
> (vii) refusing to acknowledge "me as a valid collateral contact;" and
>
> (viii) preventing "me from properly performing my job and taking care of my client."

(*Id.,* at 4-6).

In the Second Claim for Relief, Mr. Robinson asserts a claim against Defendant Bennette Valley Investments by failing to take "steps to enforce fair housing and peaceful enjoyment rules" when neighbors started harassing him after the maintenance man learned that Mr. Robinson had AIDS. (ECF No. 1, at 6). He further contends that Defendant Bennette Valley Investments "continued to illegally accept Section 8 housing payments and forced us to financially struggle in motel [sic] to survive" after the apartment flooded. (*Id.,* at 6-7). Mr. Robinson also alleges that Defendant Bennette Valley Investments falsely reported that Mr. Robinson had abandoned his client, failed to provide her with proper care, and acted "like a sexual and romantic partner to [his] employer without any evidence to establish such a dangerous, libelous, and slanderous assertion." (*Id.,* at 7). Mr. Robinson further alleges that Defendant Bennette Valley Investments allowed individuals to access and release information in his confidential HUD housing file. (*Id.*).

In the Third Claim for Relief, Mr. Robinson asserts a claim against Defendant Colorado Springs Housing Authority for refusing him "the right to work as a live in aide without cause forcing me to be homeless and on the streets for almost a year." (ECF No. 1, at 7). He also alleges that Defendant Colorado Springs Housing Authority wrongfully released and publicized his HIV status and tried to get him fired in retaliation

for filing a housing enforcement complaint. (*Id.*). Mr. Robinson finally contends that Defendant Colorado Springs Housing Authority slandered him to the Colorado Civil Rights Commission. (*Id.*).

### III. Analysis

The Court will direct Mr. Robinson to file an Amended Complaint for failing to comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure because he fails to provide a short and plain statement of his claims showing that he is entitled to relief and to assert proper jurisdiction for his claims.

The twin purposes of a complaint are to give the opposing parties fair notice of the basis for the claims against them so that they may respond and to allow the Court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief. *See Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989). The requirements of Fed. R. Civ. P. 8 are designed to meet these purposes. *See TV Communications Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991), *aff'd*, 964 F.2d 1022 (10th Cir. 1992). Rule 8(a) provides that a complaint "must contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." The philosophy of Rule 8(a) is reinforced by Rule 8(d)(1), which provides that "[e]ach allegation must be simple, concise, and direct." Taken together, Rules 8(a) and (d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules. Prolix, vague, or unintelligible pleadings violate Rule 8.

Claims must be presented clearly and concisely in a manageable format that allows a court and a defendant to know what claims are being asserted and to be able

to respond to those claims. *New Home Appliance Ctr., Inc., v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957). For the purposes of Rule 8(a), "[i]t is sufficient, and indeed all that is permissible, if the complaint concisely states facts upon which relief can be granted upon any legally sustainable basis." *Id.*

### A. Fed. R. Civ.P. 8

Based on the Court's review of the Complaint, the Court finds that Mr. Robinson fails to provide a short and plain statement of his claims in compliance with the pleading requirements of Rule 8. Mr. Robinson's claims are repetitive, not stated in a clear and concise format, and for the most part are conclusory and vague. Furthermore, Mr. Robinson does not assert any statutory basis for jurisdiction in this Court.

A decision to dismiss a complaint pursuant to Rule 8 is within the trial court's sound discretion. *See Atkins v. Northwest Airlines, Inc.*, 967 F.2d 1197, 1203 (8th Cir. 1992); *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969). The Court, however, will give Mr. Robinson an opportunity to cure the deficiencies in the Complaint by submitting an Amended Complaint that meets the requirements of Fed. R. Civ. P. 8 and complies with the following directives.

To the extent Mr. Robinson is attempting to assert a claim under 42. U.S.C. § 1983, he fails to identify a specific constitutional violation. Section 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *see also Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("[T]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.") (emphasis added). To state a constitutional deprivation pursuant to § 1983, Mr. Robinson must

explain (1) what a defendant did to him; (2) when the defendant did it; (3) how the defendant's action harmed him; and (4) what specific legal right the defendant violated. *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Mr. Robinson also is directed that he must assert personal participation by a named defendant in the alleged constitutional violation. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, Mr. Robinson must show how each named individual caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

Supervisors can only be held liable for their own misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A supervisor cannot incur liability under § 1983 for his mere knowledge of a subordinate's wrongdoing. *Id.; see also Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("[Section] 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation."). Furthermore,

> when a plaintiff sues an official under *Bivens* or § 1983 for conduct "arising from his or her superintendent responsibilities," the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well.

*Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677). Therefore, in order to succeed in a § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or

6

possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1199.

Moreover, the State of Colorado and its entities are protected by Eleventh Amendment immunity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Meade v. Grubbs*, 841 F.2d 1512, 1525-26 (10th Cir. 1988). "It is well established that absent an unmistakable waiver by the state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the amendment provides absolute immunity from suit in federal courts for states and their agencies." *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 588 (10th Cir. 1994), *overrruled on other grounds by Ellis v. University of Kansas Med. Ctr.*, 163 F.3d 1186 (10th Cir. 1998). The State of Colorado has not waived its Eleventh Amendment immunity, *see Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988), and congressional enactment of § 1983 did not abrogate Eleventh Amendment immunity, *see Quern v. Jordan*, 440 U.S. 332, 340-345 (1979).

The Eleventh Amendment, however, does not bar a federal court action so long as the plaintiff seeks in substance only prospective relief and not retrospective relief for alleged violations of federal law, but a plaintiff must assert a claim for prospective relief against individual state officers. *Verizon Maryland v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)); *Hill v. Kemp*, 478 F.3d 1236 (10th Cir. 2007). Mr. Robinson, however, seeks only money damages.

Finally, Mr. Robinson cannot state a claim based upon alleged violations of the HIPPA protections because the Federal Health Insurance Portability and Accountability

Act of 1996 (HIPPA) does not create a private right of action. *See Thompson v. Larned State Hosp.*, --- F. App'x —, *2 n.1 (10th Cir. Mar. 3, 2015) ) (citing *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010) (not squarely addressed by the Tenth Circuit but at least two sister circuits have determined HIPPA violations not remedied in a § 1983 action and collecting cases noted that support this proposition).

Accordingly, it is

ORDERED that Mr. Robinson shall have **thirty days from the date of this Order** to file an Amended Complaint on a proper Court-approved form as directed above. It is

FURTHER ORDERED that if Mr. Robinson fails to comply within the time allowed the Court will address the claims pursuant to the federal rules of civil procedure and dismiss improper and insufficient claims accordingly.

DATED February 25, 2016, at Denver, Colorado.

BY THE COURT:

S/ Gordon P. Gallagher

_____
United States Magistrate Judge